# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** ("Agreement") is made and entered into this _____ day of October, 2015, by and between **NEW HORIZONS HEALTH SYSTEMS, INC.**, Debtor-in-Possession in the United States Bankruptcy Court, Eastern District of Kentucky (Frankfort) under Bankruptcy Petition 15-30235-grs, a nonprofit corporation duly organized and existing by virtue of the laws of the Commonwealth of Kentucky with its principal office located at 330 Roland Avenue, Owenton, Kentucky 40359 (hereinafter referred to as "Seller"), **ST. ELIZABETH HEALTHCARE**, a nonprofit corporation duly organized under the laws of the Commonwealth of Kentucky with its principal office located at One Medical Village Drive, Edgewood, Kentucky 41017 (hereinafter referred to as "SEH") and **HEALTHPOINT FAMILY CARE, INC.**, a nonprofit corporation duly organized and existing by virtue of the laws of the Commonwealth of Kentucky with its principal office located at 1401 Madison Avenue, Covington, Kentucky 41011 (hereinafter referred to as "HP") (SEH and HP are hereinafter collectively referred to as "Purchaser").

## WITNESSETH:

**WHEREAS**, Seller operates a hospital located in Owenton, Kentucky which is licensed as such by the Commonwealth of Kentucky and which has earned a designation as a "Critical Access Hospital" by the Centers for Medicare and Medicaid Services as it serves the rural areas of Owen, Gallatin and Carroll Counties and provides 24/7 emergency services at 322, 326, 329, 330 Roland Avenue, Owenton, Kentucky 40359 (the "Premises") and leases space at 120 Progress Way, Owenton, Owen County, Kentucky (the "Leased Premises") for the operation of a clinic;

**WHEREAS**, Seller has operated under the name "New Horizons Health Systems, Inc." and "New Horizons Medical Center" (hereinafter referred to collectively with the Premises as the "Business") and New Horizons Family Practice (hereinafter referred to with the Leased Premises as the "Clinic");

**WHEREAS**, Seller is currently operated by the members of the Board of Directors (collectively the "Board");

**WHEREAS**, Seller desires to sell and assign to SEH substantially all of the assets used in the operation of the Business and SEH desires to purchase same, and Seller desires to sell and assign to HP substantially all of the assets used in the operation of the Clinic and HP desires to purchase same; and

**WHEREAS**, Seller and SEH desire to set forth the terms and conditions of the sale of all of the assets of the Business in accordance and in full compliance with the provisions of Title XVIII of the Social Security Act, corresponding regulations and the applicable laws and regulations of the Commonwealth of Kentucky.

**NOW THEREFORE**, in consideration of the above recitals and the mutual promises and covenants contained herein, the parties agree as follows:

1.      **Purchase, Sale and Assignment.**

   **A.**  Seller shall sell and deliver to SEH on the Closing Date (as hereinafter defined) and SEH shall purchase from Seller substantially all of the assets used in and/or related to the operation of the Business ("Business Assets"), including the following:

     **(i)**  All transferable permits, licenses, certificates, authorizations, accreditations, orders, ratings and approvals of all federal, state, or local governmental or regulatory authorities which relate to the Business and which are held by Seller (the "Permits"), but only to the extent the same are transferable, all of which are listed on *Schedule 1.A.(i)*;

     **(ii)**  All of Seller's operating assets including, but not limited to, inventory and supplies located at the Business;

     **(iii)**  All of Seller's equipment, machinery and furnishings used in the Business and more specifically described on *Schedule 1.A.(iii)*. (the "Business Equipment");

     **(iv)**  All of Seller's rights, title and interest in the contracts, leases, service agreements and other agreements agreed to be assumed by Purchaser as listed on *Schedule 1.A.(iv)* attached hereto (the "Assumed Contracts"), including rights to any security deposits.  Purchaser shall have the right to add and/or remove Assumed Contracts to/from *Schedule 1.A.(iv)* up to the date of Closing.  Simultaneously with Seller's motion to the United States Bankruptcy Court for the Eastern District of Kentucky (Frankfort) to approve and confirm the sale to Purchaser in accordance with the terms of this Agreement, Seller shall file a motion to assume and assign executory contracts and to fix the amounts necessary to cure all defaults as required by 11 USC § 365(b) (the "Cure Amounts").

     **(v)**  The restrictive covenants set forth in Section 7 of this Agreement;

     **(vi)**  All of Seller's goodwill relating to the Business; all customer and patient lists and files, referrer lists, provider lists, records and similar sales and marketing information in Seller's possession relating to the Business; and medical records of the patients serviced by the Business and in Seller's possession; and personnel records relating to those employees hired by Purchaser; and

     **(vii)**  All of Seller's right and interest in the trade names used in connection with the Business, registered and unregistered trademarks, service marks and applications, all registered and unregistered copyrights, trade secrets, licenses, know-how, specifications, literature, all rights in internet web sites and internet domain names presently used by Seller, data, code, and other related intellectual property, all telephone and telecopier numbers, and all other intangible property which relate specifically to the Business, and all other intangible assets related to the Business, whether located at the Business, or any other location, including, but not limited to, those identified on attached *Schedule 1.A.(viii)*.

**(viii)**   All of Seller's rights, title and interest in the real estate known as 330 Roland Avenue, Owenton, Kentucky 40359 and more particularly described in the Deed attached hereto as **Exhibit E**.

**B.**   Seller shall sell and deliver to HP on the Closing Date and HP shall purchase from Seller substantially all of the assets used in and/or related to the operation of the Clinic ("Clinic Assets") (the Business Assets and the Clinic Assets are hereinafter referred to collectively as the "Purchased Assets"), including the following:

**(i)**   All of Seller's operating assets including, but not limited to, inventory and supplies located at the Clinic;

**(ii)**   All of Seller's equipment, machinery and furnishings used in the Clinic and more specifically described on ***Schedule 1.B.(ii)*** (the "Clinic Equipment") (the Business Equipment and the Clinic Equipment are hereinafter referred to collectively as the "Equipment").

**C.**   The Purchased Assets shall <u>**not**</u> include Seller's prepaid current accounts arising prior to the Closing Date, cash on hand or in money markets, Seller's accounts receivable (the "Receivables"), rights to any payments attributable to the Center for Medicare and Medicaid Services' ("CMS") Physician Quality Reporting Initiative arising prior to Closing Date, rights to payments attributable to CMS's "meaningful use" of electronic medical record systems arising prior to Closing Date, rights to refunds or settlement payments attributable to, or resulting from, any lawsuit, arbitration or similar proceeding involving any third-party payer (governmental or commercial) with respect to claims arising prior to the Closing Date, corporate minute books and records, financial and accounting records, or notes receivable, and the property listed on ***Schedule 1.C.*** (collectively the "Excluded Assets").

**2.**   <u>**Purchase Price and Payment.**</u>   The total purchase price for the Purchased Assets (the "Purchase Price") shall be $650,000, $600,000 of which shall be paid by SEH and $50,000 of which shall be paid by HP.  In order to enable Seller to pay the current operating expenses of the Business up to the Closing Date, $150,000 of said Purchase Price shall be paid by SEH to Seller upon entry of an Order by the United States Bankruptcy Court for the Eastern District of Kentucky (Frankfort) approving the sale procedure set forth herein and approving the advance of the Purchase Price by SEH in the amount of $150,000 and the grant by Seller to SEH of a first priority mortgage on the Premises to secure repayment of the same to SEH in the event the sale to SEH does not close.  SEH shall pay $450,000 of the balance of the Purchase Price and HP shall pay $50,000 of the balance of the Purchase Price at Closing as described in § 8 and Debtor shall in turn pay $100,000 of the Purchase Price at Closing to Golden Scepter as a Cure Amount. In the event SEH elects to assume other of Debtor's contracts prior to Closing, SEH shall at Closing pay the Cure Amounts due on each of the Assumed Contracts to Debtor in accordance with ***Schedule 1.A.(iv)*** and the Sale Order, and the Debtor shall in turn pay at Closing the Cure Amount to the third party to the Assumed Contract.

Seller shall be responsible for the collection of Accounts Receivable arising from the Business prior to Closing Date.  Accounts Receivable arising from the Business after Closing Date shall be the property of SEH, and Seller shall endorse all checks, drafts, warrants, and other

evidence of payment over to SEH and take any other reasonable action required to allow SEH to receive and negotiate the proceeds of such post-closing Accounts Receivable.  All proceeds from the collection of pre-Closing Date Accounts Receivable shall be the exclusive property of Seller.  In the event payments received by SEH during the one hundred twenty (120) day period following Closing cannot be matched to a specific date of service or procedure or otherwise identified with pre-Closing or post-Closing services, then collection proceeds shall be applied on a first-in, first-out basis.  Thereafter, unless payments can be matched to a specific pre-Closing date of service, the payment shall be presumed applicable to post-Closing services.

      **3.**      **Taxes; Allocation of Purchase Price.**  Seller shall be responsible for the payment of any tax imposed by any federal, state, or local government agency in connection with the ownership of the Purchased Assets or the operation of the Business prior to the Closing Date.

      **4.**      **No Assumption of Liabilities.**  Except for liabilities with respect to the Assumed Contracts, which SEH expressly agrees to assume, (the "Assumed Liabilities") and those accruing from the Purchaser's operation of the Business and Clinic after the Closing Date, no liabilities, debts or obligations of Seller, whether accrued, absolute, contingent or otherwise, and whether due or to become due, shall be assumed by SEH in the transactions contemplated by this Agreement, including but not limited to Seller's liabilities, debts or obligations resulting from any employee benefit plan of Seller.  Any reimbursement to any third-party payor for any monies owed for refunds arising from the operation of the Business prior to the Closing Date, whether known or unknown on the Closing Date, not expressly assumed by SEH, shall be paid by Seller to SEH if SEH is required to pay same by offset or otherwise; provided, however, that Seller shall retain the right to appeal any such items at Seller's sole expense.  Subject to the foregoing appeal right, said amount shall be paid within fifteen (15) days of Seller's receipt of demand for payment, which demand shall be accompanied by documentation verifying the nature and amount of any such monies owed, and any applicable appeal rights.  SEH shall reasonably cooperate with Seller in any effort to recoup such monies through any available appeal process, all at Seller's sole cost and expense.

      **5.**      **Vendors and Creditors.**  Seller warrants that all liabilities to vendors and creditors of the Business as of the Closing Date other than Assumed Liabilities shall be the responsibility of Seller.  Notwithstanding the foregoing, SEH shall pay Seller $150,000.00 of the Purchase Price as provided in Section 2 of the Agreement to allow Seller to pay the current operating expenses of the Business incurred from the date of execution of the Agreement up to the Closing Date pursuant to entry of an Order by the Bankruptcy Court under 11 USC §§ 105, 363, and 365 (the "Sale Order").  In the event either Bankruptcy Court does not approve the sale to SEH or a Closing does not occur, the sum of $150,000 advanced by SEH to Seller for payment of operating expenses plus a breakup fee equal to 10% of the Purchase Price will be paid SEH and Seller's obligation hereunder shall be treated as an administrative expense with priority over any or all administrative expenses of the kind specified in 11 USC 503(b) or 507(b) and will further be secured by a first priority mortgage on the Premises.

      **6.**      **Examination.**  Seller shall give Purchaser, its legal counsel, auditors and other representatives, full and complete access to all the assets, leases, contracts, agreements, commitments, books and records of Seller during normal business hours and upon reasonable notice.

7.      **Non-Interference and Non-Competition.**

A.      In consideration of the purchase price for Seller's Business, Seller agrees that it will not, for a period of five (5) years after the Closing Date (the "Restricted Period"), directly or indirectly in any manner whatsoever engage in any Patient Interference or otherwise solicit or in any way interfere with Purchaser's patients, business operations or good will after the Closing Date.

B.      In addition, in consideration of the Purchase Price, during the Restricted Period, Seller agrees that it will not directly or indirectly own or operate any hospital or clinic within Owen, Gallatin or Carroll Counties, Kentucky.  Seller agrees that this Section 7 governing non-solicitation, non-interference, and non-competition is an agreement separate and independent of the remaining provisions of this Agreement and may be enforced in any court of competent jurisdiction designated and chosen by Purchaser.

C.      In further consideration of the purchase price for Seller's Business, Seller agrees that it will not, during the Restricted Period, solicit or hire any employees of Purchaser working at the Business.

It is expressly agreed by Seller that the terms of the non-solicitation, non-interference, and non-competition agreements above are necessary to protect against the loss of goodwill and profit associated with the purchase of Seller's Business, and the amount of such loss is uncertain and difficult to ascertain or estimate.

D.      For purposes of this Section 7, "Patient Interference" means an overt act of discouraging a patient from utilizing Purchaser's hospital facilities by a management employee of Seller which results in a rejection of Purchaser as the patient's health provider.

E.      To the extent that any one or more of the provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

F.      In the event of any litigation with respect to enforcement of this Section, the non-prevailing party in such litigation shall be responsible for and pay all fees and expenses, including, without limitation, court costs and attorney's fees, incurred by the prevailing party.

G.      The parties agree that the restrictions on competition set forth in this Section 7 are reasonable and necessary to preserve the legitimate business interests of Purchaser and that the maximum protection available under the law shall be provided Purchaser by this Agreement to protect Purchaser's interests in the Business and confidential information and that, if the restrictions imposed hereby are held by any court to be invalid, illegal or unenforceable as to time, territory, scope or otherwise, this Section 7 shall be construed to impose restrictions which are valid, legal and enforceable as to time, territory, scope or otherwise, as the case may be, to the maximum extent permitted under applicable law.

8.   **Closing.**

A.      Closing of the transactions provided under this Agreement shall take place at the offices of Purchaser's counsel, Dressman Benzinger LaVelle psc, 207 Thomas More Parkway, Crestview Hills, Kentucky 41017, at 10:00 a.m., on a date designated by Purchaser with at least three (3) days' notice, which date shall be no later than November 30, 2015 ("Closing" or "Closing Date"), upon satisfaction or waiver of the conditions to Purchaser's obligation to close as set out in Section 11.

B.      At Closing, Seller shall deliver to SEH, or SEH's designee, a Bill of Sale in the form attached hereto as **Exhibit A**.

C.      At Closing, Seller shall deliver to HP, or HP's designee, a Bill of Sale in the form attached as **Exhibit A-1.**

D.      Seller agrees, as soon as reasonably possible after the execution of this Agreement, but no later than ten (10) business days, to commence its Medicare Form 855 change of ownership filings applicable to Seller.

E.      Purchaser shall deliver to Seller at Closing a Certificate of Incumbancy and Authorization in the forms attached hereto as **Exhibit B** and **Exhibit B-1**.

F.      At Closing, SEH shall deliver to Seller $350,000 in immediately available funds.

G.      At Closing, HP shall deliver to Seller $50,000 in immediately available funds.

H.      Seller shall deliver to Purchaser at Closing a Certificate of Incumbancy and Authorization in the form attached hereto as **Exhibit C**.

I.      Seller and SEH, at Closing, shall execute and deliver an Assignment and Assumption of Premises Lease in a form attached hereto as **Exhibit D.**

J.      Seller shall deliver to SEH at Closing a General Warranty Deed to the Premises in the form attached hereto as **Exhibit G.**

9.   **Seller's Representations and Warranties.**   As a material inducement to Purchaser to execute and perform the obligations required under this Agreement, Seller represents and warrants to Purchaser that, except as otherwise disclosed herein:

A.      Seller is a not-for-profit services corporation duly organized and existing under the laws of the Commonwealth of Kentucky, and the delivery and performance of the Agreement by Seller has been duly authorized by all necessary action.

B.      Subject to the Assumed Liabilities, at Closing Seller will have good, sole, absolute and marketable title to all of the Purchased Assets being sold to Purchaser pursuant to

the terms of this Agreement, free and clear and not subject to any lease, claim, mortgage, pledge, lien, charge, security interest, encumbrance or restriction whatsoever.

C.      As of the date hereof, Seller is using the Premises in the ordinary course of its business and has performed all major repairs required in conjunction with the foregoing.  To the best of their knowledge, there are no pending or proposed changes to the zoning of the Premises; and Seller has not received any notices from any insurance company of any defects or inadequacies in the Premises.

D.      The lease of the premises at 120 Progress Way, Owenton, Owen County, Kentucky (the "Premises Lease"), a true and accurate copy of which has been provided to SEH, is valid and legally binding on Seller and the named landlord.

E.      Seller shall not execute or amend any equipment leases or office leases without Purchaser's prior written consent.

F.      The information and documentation provided by Seller and relied upon by Purchaser as consideration for this Agreement is true and correct in all material respects as of the date stated therein.

G.      No representation or warranty by Seller in this Agreement, or in any writing attached hereto, contains or will contain as of the date of Closing any untrue statement of material fact or omits or will omit to state any material fact related thereto.

**10.      Purchaser's Representations and Warranties.**  As a material inducement to Seller to execute and perform the obligations required under this Agreement, Purchaser unconditionally represents and warrants that, except as otherwise disclosed herein:

A.      Purchaser is a nonprofit corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Kentucky and the delivery and performance of this Agreement has been duly authorized by all necessary action and this Agreement and the other documents contemplated herein are valid and binding agreements of Purchaser.

B.      No litigation or proceedings, legal, equitable, administrative, through arbitration or otherwise, are pending or threatened which might affect Purchaser or the consummation of the transactions described in this Agreement.

C.      Purchaser's execution, delivery, performance and compliance with this Agreement shall not result in the violation of or be in conflict with or constitute a default under any mortgage, indenture, lease, contract, agreement, instrument, judgment, decree, order, statute, rule or regulation.

**11.      Conditions Precedent to Closing.**

A.      Purchaser's obligations to consummate this Agreement are subject to and conditioned upon the satisfaction, at or prior to the date of Closing, of each of the following conditions:

7

**(i)** The representations, warranties and covenants made by Seller in this Agreement must be true in all material respects at and as of Closing as if made on and as of Closing (excluding any materiality qualifier in such representations and warranties).

**(ii)** Seller must have performed and complied with all of its covenants and obligations under this Agreement in all material respects which are to be performed or complied with by them before or at Closing.

**(iii)** Seller must have delivered to Purchaser a certificate stating that (1) the representations, warranties and covenants made by such Seller in the Agreement are true in all material respects at and as of Closing as if made on and as of Closing (excluding for this purpose any materiality qualifier in such representations and warranties), and (2) such Seller has performed and complied with all of its covenants and obligations under this Agreement which are to be performed or complied with by them before or at Closing.

**(iv)** As of the Closing Date, no suit, action, claim or governmental proceeding is pending or threatened against, and no order, decree or judgment of any court, agency or other governmental authority has been rendered against any party to this Agreement which would render it unlawful, as of the Closing Date, to effect the transactions contemplated by this Agreement in accordance with its terms or otherwise have a material adverse effect on Purchaser's ownership, use or enjoyment of the Leased Premises, the Business, the Clinic, or the Purchased Assets.

**(v)** All necessary material federal, state and local governmental and regulatory and other third party consents, waivers, and other approvals or determinations required to be obtained with respect to Purchaser's operation of the Business and the Clinic after Closing must have been obtained, including but not limited to an order of the United States Bankruptcy Court for the Eastern District of Kentucky (Frankfort) approving and confirming the sale to Purchaser in accordance with the terms of this Agreement, with the form and substance of such consents, orders, etc. satisfactory to Purchaser in its sole discretion.

**(vi)** Seller shall, during the period beginning on the date of this Agreement and ending at Closing: (i) continue to operate Seller's Business in the usual and ordinary course consistent with past practices and in substantial conformity with all applicable laws, ordinances, regulations, rules or orders and will not institute any new, novel or unusual business practices; (ii) Seller shall not allow any liens to be placed against any of the Purchased Assets unless those liens are discharged at or prior to Closing; (iii) Seller shall continue to perform routine maintenance and repairs with respect to the Premises and (iv) Seller shall preserve the goodwill and business relationships of the Business.

**(vii)** Seller shall permit representatives of Purchaser to have full access to and to examine, at all reasonable times and in a manner so as not to interfere with the normal business operations of Seller, the books, records, properties, and assets associated with the Purchased Assets and the Premises.

**(viii)** Seller and SEH, at Closing, shall execute and deliver an assignment of the Premises Lease in a form attached hereto as **Exhibit D**.

**(ix)**      Seller shall convey to Purchaser free, clear, and marketable title to the Purchased Assets.

**(x)**      Seller and SEH, at Closing, shall execute and deliver a Deed to the Premises in a form attached as **Exhibit E**.

**(xi)**      Seller shall execute and deliver to Purchaser a Bill of Sale in a form attached as **Exhibit A** and **Exhibit A-1**.

**B.**      Seller's obligations to consummate this Agreement are subject to and conditioned upon the satisfaction, at or prior to the date of Closing, of each of the following conditions:

**(i)**      The representations, warranties and covenants made by Purchaser in this Agreement must be true in all material respects at and as of Closing as if made on and as of Closing (excluding any materiality qualifier in such representations and warranties).

**(ii)**      Purchaser must have performed and complied with all of its covenants and obligations under this Agreement in all material respects which are to be performed or complied with by it before or at Closing.

**(iii)**      Purchaser must have delivered to Purchaser a certificate stating that (i) the representations, warranties and covenants made by Purchaser in the Agreement are true in all material respects at and as of Closing as if made on and as of closing (excluding for this purpose any materiality qualifier in such representations and warranties) and (ii) Purchaser has performed and complied with all of its covenants and obligations under this Agreement which are to be performed or complied with by it before or at Closing.

**(iv)**      As of the Closing Date, no suit, action, claim or governmental proceeding is pending or threatened against, and no order, decree or judgment of any court, agency or other governmental authority has been rendered against any party to this Agreement which would render it unlawful, as of the Closing Date, to effect the transaction contemplated by this Agreement in accordance with its terms.

**(v)**      All necessary material federal, state and local governmental and regulatory and other third party consents, waivers, and other approvals or determinations required to be obtained with respect to Purchaser's operation of the Business and the Clinic after Closing must have been obtained, including but not limited to an order of the United States Bankruptcy Court for the Eastern District of Kentucky (Frankfort) approving and confirming the sale to Purchaser in accordance with the terms of this Agreement, with the form and substance of such consents, orders, etc. satisfactory to Purchaser in its sole discretion.

**12.**      **Survival and Non-Merger.**  The representations, warranties and obligations relative to non-interference and non-competition as set forth in Section 7 of this Agreement shall survive the execution and delivery of the Bill of Sale and other instruments of conveyance and the Closing of this Agreement for a period of five years.

13.    **Notices.**    All notices, requests, consents and other communications under this Agreement shall be in writing and shall be mailed by first class, registered, or certified mail, postage prepaid, by facsimile or by other means of delivery or communication for which receipt can be verified, or by delivering the same in person to such party.  For purposes of notice, the addresses of the parties shall, until changed as hereinafter provided, be as follows:

If to Seller:

    _____
    _____
    _____
    Attn:  _____

With a copy to:

    Dinsmore and Shohl
    250 West Main Street, Suite 1400
    Lexington, KY  40507
    Attn:  Ellen Arvin Kennedy

If to SEH:

    St. Elizabeth Healthcare
    One Medical Village Drive
    Edgewood, KY 41017
    Attn:  Garren Colvin, President

With a copy to:

    Dressman Benzinger LaVelle psc
    207 Thomas More Parkway
    Crestview Hills, KY 41017
    Attn: Elizabeth Graham Weber, Esq.

If to HP:

    HealthPoint Family Care, Inc.
    1401 Madison Avenue
    Covington, KY 41011
    Attn:  Christopher M. Goddard

With a copy to:

    Frost Brown Todd, LLC
    3300 Great American Tower
    301 East Fourth Street
    Cincinnati, OH 45202

Attn: Douglas L. Lutz, Esq.

Notices deposited in the mail in the manner hereinabove described, or with any other verifiable means of delivery, shall be effective only if and when received by the party to be notified.  Any party hereto may change the address to which notices are to be received by advising the other party hereto in writing in the manner provided herein.

14.    **Miscellaneous**.

A.    The parties shall not assign their rights or obligations under this Agreement.

B.    This Agreement may be amended or modified at any time and in all respects, or any provision hereof may be waived, only by an instrument in writing executed by the parties hereto.

C.    For purposes of construction, enforcement and interpretation, this Agreement shall be construed, enforced and interpreted in accordance with the laws of the Commonwealth of Kentucky.

D.    All terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of, and be enforceable by Seller and Purchaser and their respective successors and permitted assigns.

E.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision hereof.  It is the intention of the parties that any provisions of this Agreement which may be found to be invalid or unenforceable shall be modified to the extent necessary to make such provisions valid and enforceable.

F.    Subsequent to the Closing, the parties shall promptly provide documentation, payment of amounts required hereunder and take all further actions and execute such other documents or instruments of transfer as may be necessary to consummate the transactions provided for in this Agreement.

G.    All publicity or announcements, whether to patients, employees or others, shall be coordinated and agreed upon between the parties.

H.    This Agreement constitutes the entire agreement between the parties. There are no agreements, understandings, restrictions, warranties or representations between the parties other than those set forth herein.

I.    The parties acknowledge and agree that any payments for medical services performed after the Closing by those persons who were formerly employed by Seller and become employed by Purchaser as part of this Agreement are the property of Purchaser.

15.    **Seller's Healthcare Representations and Warranties**.    As a material inducement to Purchaser to execute and perform the obligations required under this Agreement, Seller represents and warrants to Purchaser that except as otherwise disclosed herein:

## A.     Health Care Licenses.

(i)     Seller's Health Care Licenses: (i) have been obtained, are in effect and are set forth in *Schedule 15.A.(i)*; (ii) are valid and in good standing in each jurisdiction in which such Health Care Licenses were issued or are operable; and (iii) have not been subject to revocation or forfeiture by any Governmental Authority, nor has any notice been received by Seller of any proceeding to revoke or forfeit such Health Care Licenses.  Except as disclosed in *Schedule 15.A.(i)*, Seller is not a party to any order or legal or administrative proceeding with respect to any of the Health Care Licenses.  Seller has not received written notice of any action pending or recommended by any Governmental Authority (or in the case of accreditation, the accrediting body) having jurisdiction over a Health Care License to revoke, withdraw or suspend any such Health Care License that has not been resolved without the subject Health Care License being revoked, withdrawn or suspended.  No event has occurred which, with the giving of notice, the passage of time, or both, would constitute grounds for a material violation, order or deficiency with respect to any Health Care License or to revoke, withdraw or suspend any such Health Care License.

(ii)     Seller has complied in all material respects with respect to the Business with all state licensing standards and Laws and any obligation included in any Health Care Licenses.

## B.     No Agency Action or Enforcement.

(i)     Seller is not currently, with respect to any Governmental Authority a party to any consent decree, judgment, order, or settlement that (1) requires the payment of money by Seller to any Governmental Authority or Third Party Payor, (2) requires any recoupment of money from Seller by any Governmental Authority or Third Party Payor, or (3) requires or prohibits any activity by Seller; nor is Seller the subject of any audit, inquiry, focused review or investigation.

(ii)     Seller's right to receive reimbursements pursuant to any Government Program or Private Program has not been terminated or otherwise materially adversely affected as a result of any investigation or action by any Governmental Authority or Third Party Payor.  Except as set forth on *Schedule 15.B* and for claims or refund requests in the ordinary course of business, since January 1, 2003, Seller (with respect to the Business) has not been the subject of any inspection, investigation, survey, audit, monitoring or other form of review by any Governmental Authority, trade association, professional review organization, accrediting organization, licensing or certifying agency, other than any such inspection, investigation, survey, audit, monitoring or other form of review that was routinely conducted by any such Governmental Authority, trade association, professional review organization, accrediting organization, licensing or certifying agency and was not based upon, and did not result in a finding of, any alleged improper activity, nor has Seller received any notice of deficiency during the past five (5) years in connection with its operations.  There are not any outstanding deficiencies or work orders of any Governmental Authority having jurisdiction over Seller, or requiring conformity to any applicable agreement, conditions of participation, accreditation standard, statute, regulation, ordinance or bylaw, including but not limited to, the Government Programs and Private Programs.

**(iii)** Seller is not subject to (1) any proceeding to exclude or suspend Seller or any of Seller's provider numbers from any Government Program or any Private Program, or (2) any corporate integrity agreement, settlement agreement, or other comparable agreement with any Governmental Authority.

**(iv)** To the best of Seller's knowledge, Seller has not engaged in any activities in violation of 42 U.S.C. §§ 1320a-7, 1320a-7a, 1320a-7b, 1395nn, and 1396b, 31 U.S.C. §§ 3729-3733, the Federal CHAMPUS/TRICARE statute, or any other federal or state statutes related to false or fraudulent claims, the regulations promulgated pursuant to such statutes, or any related state or local statutes or regulations, including the following:

**(1)** knowingly and willfully making or causing to be made any false statement or representation of a material fact in any application for any benefit or payment;

**(2)** knowingly and willfully making or causing to be made any false statement or representation of a material fact for use in determining rights to any benefit or payment;

**(3)** failing to disclose knowledge by a claimant of the occurrence of any event affecting the initial or continued right to any benefit or payment on its own behalf or on behalf of another, with intent to fraudulently secure such benefit or payment; or

**(4)** knowingly and willfully soliciting or receiving any remuneration (including any kickback, bribe or rebate), directly or indirectly, overtly or covertly, in cash or in kind or offering to pay or receive such remuneration in return for (A) referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare or Medicaid, or (B) purchasing, leasing, or ordering or arranging for or recommending the purchasing, leasing, or ordering of any good, facility, service or item for which payment may be made in whole or in part by Medicare or Medicaid, including (1) making or receiving payments for personal or management services pursuant to a medical director agreement, consulting agreement, management contract, personal services agreement or otherwise; (2) making or receiving payments for the use of premises leased to or from a physician, a family member of a physician, or an entity in which a physician or family member has an ownership or investment interest; and (3) making or receiving payments for the acquisition or lease of equipment, goods or supplies from a physician, a family member of a physician, or an entity in which physician or family member has an ownership or investment interest.

**(v)** Seller has not received any notice indicating that its qualification as a participating provider in any Governmental Program or Private Program may be terminated or withdrawn, nor does Seller have any reason to believe that such qualification may be terminated or withdrawn.

**(vi)** No current employee of the Business:

**(1)**    has been convicted of or charged with any violation of applicable laws or regulations related to Medicare, Medicaid, any other Federal Health Care Program (as defined in 42 U.S.C. § 1320a-7b(f)), or any other Governmental Program;

**(2)**    has been convicted of, charged with, or investigated for any violation of applicable laws or regulations related to fraud, theft, embezzlement, breach of fiduciary responsibility, financial misconduct, obstruction of an investigation, or controlled substances; or

**(3)**    is excluded, suspended or debarred from participation, or is otherwise ineligible to participate, in Medicare, Medicaid, any other Federal Health Care Program, or any other Governmental Program or has committed any violation of applicable laws or regulations which is reasonably expected to serve as the basis for any such exclusion, suspension, debarment or other ineligibility.

**(vii)**    In connection with the Business, Seller has verified the credentials and conducted criminal background checks and screened employees and independent contractors under the List of Excluded Individuals/Entities for all persons providing patient care or other services reimbursable under Government Programs.

**(viii)**    In connection with the Business, Seller has not received any notice of any claim, requirement or demand of any Governmental Authority to provide additional personnel, training or supervision so as to conform to or comply with any existing Law or Health Care License. True and complete copies of all reports, correspondence, notices and other documents relating to any matter described or referenced in Section 15.B have been made available to Purchaser.

**(ix)**    In connection with the Business, neither Seller nor any of its employees has entered into any joint venture, partnership, co-ownership or other arrangement involving any ownership or investment interest by any Person, including a drug or equipment supplier, distributor or manufacturer, that is or was in a position to make or influence referrals, furnish items or services to, or otherwise generate business for, Seller.

**(x)**    Seller does not have any reimbursement or payment rate appeals, disputes or contested positions pending before any Governmental Authority or any administrator of any Private Program with respect to the Business except as set forth on ***Schedule 15.B.(x)***.

**(xi)**    To the best of Seller's knowledge, Seller has complied with all requirements regarding collection of co-payments and deductibles and reimbursement of credit balances under Government Programs and Private Programs with respect to the Business.

**C.**    **HIPAA Compliance.**

**(i)**    To the best of Seller's knowledge, Seller, for those operations related to and of the Business, has established and implemented such policies, programs, procedures, contracts and systems, as are necessary to comply with HIPAA; Title II, Subtitle F, Sections 261-264, Public Law 104-191; and the Standards for Privacy of Individually

14

Identifiable Health Information, 45 C.F.R. Parts 160-164, and the HIPAA Security and Transactions and Code Sets standards.

    **(ii)** Except as set forth on ***Schedule 15.C.***, to the best of Seller's knowledge, Seller is in compliance in all material respects with HIPAA Privacy and Security laws.  Seller is not aware of any breach of the HIPAA Privacy and Security laws.  Seller has made available to Purchaser all consultant reports and plans of action for implementation of any HIPAA requirements under the Privacy and Security Laws.

    **D.**  **<u>Billing Practices; Reimbursements.</u>**

    **(i)** To the best of Seller's knowledge, all reports, cap reports, cost reports, billings, claims or other filings for professional and related services submitted by or on behalf of Seller related to and of the Business to any Governmental Authority, including its fiscal intermediaries and/or carriers and insurance carriers for any Government Program, or any Third Party Payors, have been timely submitted in compliance in all material respects with all applicable Law and Health Care Licenses and are accurate and complete in all material respects. Seller is and, since January 1, 2003, has been in compliance in all material respects with the filing requirements with respect to required cost reports of Seller, and such reports do not claim, and Seller has not received, payment or reimbursements in excess of the amount provided or allowed by applicable Law or any applicable agreement, except where excess reimbursement was noted on the cost report.  Seller has paid or caused to be paid all known and undisputed refunds, overpayments, discounts or adjustments which have become due pursuant to such reports, cap reports, cost reports, billings or other filings and has not claimed or received reimbursements from Government Programs or Private Programs in excess of amounts permitted by Law.  Except as set forth in ***Schedule 15.D.(i)***, there are no pending appeals, adjustments, challenges, audits, inquiries, additional document requests, litigation or notices of intent to audit, reopening of cost reports, Notices of Program Reimbursement reflecting overpayments, penalties, interest or fines with respect to any such reports, cap reports, cost reports, billings or other filings related to and of the Business.  To the best of Seller's knowledge, all billing practices of Seller to Third Party Payors and Government Programs have been in compliance in all material respects with all applicable Law, regulations and policies of such Third Party Payors and Government Programs.

    **(ii)** Seller is certified, with respect to the Business, for participation and reimbursement under Titles XVIII and XIX of the Social Security Act.  Seller has current provider numbers and provider agreements for such Government Programs and with such private non-governmental programs, including without limitation any private insurance program, under which it directly or indirectly is presently receiving payments or is eligible to receive payments (such non-governmental programs herein referred to as "<u>Private Programs</u>"), in each case in which Seller participates.  Seller is in compliance in all material respects with all requirements of each Government Program and each Private Program in which Seller participates.

    **(iii)** Seller is certified for participation in, and is a party to valid provider agreements for payment by, Medicare and each other Governmental Program listed on ***Schedule 15.D(iii)***.  Seller has not received written notice of any pending or threatened investigations by, or loss of participation in, the Programs related to the Business.

### E.     **Regulatory Compliance.**

**(i)**     Seller is qualified, with respect to the Business, as a participating provider under the Governmental Programs in which it participates.  Seller has not received any written notice indicating that such qualification will be terminated or withdrawn.  Seller has timely filed all claims or other reports required to be filed with respect to the purchase of products or services by Third Party Payors in the ordinary course of business, and all such claims or reports are complete and accurate in all material respects.  To the best of Seller's knowledge, Seller is in compliance in all material respects with all applicable health-care related Law (including, without limitation, Law relating to the payment or receipt of illegal remuneration, including 42 U.S.C. § 1320a-7b(b) (the Medicare/Medicaid anti-kickback statute), 42 U.S.C. § 1395nn (the Stark Statute), 42 U.S.C. § 1320a-7a, 42 U.S.C. § 1320a-7b(a), 42 U.S.C. § 1320a-7b(c) and any applicable state Law governing kickbacks and matters similar to such federal statutes (collectively "Fraud and Abuse Laws"), and Seller has not received any written notice of noncompliance with respect thereto.  All financial records, patient records and other documents required to be maintained by Seller for the Business have been continuously maintained for a period of at least seven (7) years from the date of creation of such document.

**(ii)**     Except as set forth on *Schedule 15.E.(ii)*, no employees, officers or members of the board of directors of Seller has been convicted of or charged with a Medicare, Medicaid, other Federal Health Care Program (as defined in 42 U.S.C. § 1320a-7b(f)), or other Governmental Program related offense, or convicted of or charged with a violation of federal or state law related to healthcare fraud.  No employees, officers or members of the board of Seller has been excluded or suspended from participation in Medicare or Medicaid, or other Governmental Program, or have been debarred, suspended or are otherwise ineligible to participate in Governmental Programs.

**(iii)**     To the best of Seller's knowledge, neither Seller nor any Seller directors, officers or employees has directly or indirectly made or offered to make any contribution, gift, bribe, rebate, payoff, influence payment, kickback or other payment to any Person, regardless of form whether in money, property or services, including without limitation: (1) to obtain favorable treatment in securing business, (2) to pay for favorable treatment for business secured, (3) to obtain special concessions or for special concessions already obtained, for or in respect of Seller, or (4) to induce or reward the referral of business or services that are billed to any governmental or private health program.

**(iv)**     No referral source of Seller maintains an ownership interest in, or compensation arrangement with, Seller in contravention of the Fraud and Abuse Laws with respect to the Business.

**(v)**     Seller has not violated, nor is it the subject of any enforcement action by any governmental authority under, the Medical Waste Tracking Act, 42 U.S.C. §§ 6992 et seq., or any other applicable federal, state or local governmental law dealing with the disposal of medical waste.

### F.     **Definitions.**   For purposes of this Agreement, the following terms and variations thereof shall have the meanings specified or referred to in this Section 17.F:

"Governmental Authority" means (i) any federal, state, county, municipal or other government, domestic or foreign, or any agency, board, bureau, commission, court, department or other instrumentality of any such government, (ii) any court, arbitrational tribunal, administrative agency or commission, or (iii) any Person having the authority under any applicable Law to assess and collect Taxes, or (iii) the U.S. Department of Health and Human Services (DHHS), the Center for Medicare and Medicaid Services or its fiscal intermediary and carrier agents, the DHHS Office of Inspector General, the U.S. Department of Justice, any state attorney general, any state Medicaid Fraud unit, the Office of Civil Rights and any state department of health.

"Government Programs" means Medicare, Medicaid, and all other similar federal, state or local governmental health care reimbursement programs.

"Healthcare Licenses" means all licenses, Permits, accreditations, certificates of need, provider numbers, provider agreements, approvals, qualifications, certifications, and other authorizations or governmental approvals granted by any health care regulatory agency, healthcare accreditation body, such as the Joint Commission, or other Governmental Authority or Third Party Payor relating to or affecting the Business, the ownership, operation, maintenance, management, use, regulation, development or expansion of the Business, the provision of health care services thereby, or the reimbursement of health care costs relating thereto.

"HIPAA" means Health Insurance Portability and Accountability Act.

"Law" means applicable statutes, common laws, rules, ordinances, regulations, codes and governmental guidelines or interpretations having the force of law, in each case, of a Governmental Authority.

"Legal Proceeding" means any action, arbitration, audit, hearing, investigation, survey, litigation or suit (whether civil, criminal, administrative, judicial or investigative, whether formal or informal, whether public or private) commenced, brought, conducted or heard by or before, or otherwise involving, any Governmental Authority or arbitrator, and including, in any event, any recoupment action with respect to billings submitted to any Governmental Authority, including its fiscal intermediaries and/or carriers and insurance carriers for any Governmental Program or any Third Party Payors.

"List of Excluded Individuals/Entities" means the database maintained by the DHHS Office of Inspector General relating to parties excluded from participation in Medicare, Medicaid and all other federal health care programs.

"Permits" means all licenses, certificates of occupancy and other permits, consents and approvals required by any Governmental Authority to lawfully operate the Business (including any pending applications for such licenses, certificates, certificates of need, permits, consents or approvals).

"Person" means an individual, a corporation, a limited liability company, a partnership, an association, a trust or any other entity, including a Governmental Authority.

"Third Party Payor" includes any entity charged with paying claims or reimbursing the Business for health care services provided to Government Program or Private Program patients including but not limited to Government Program fiscal intermediaries and carriers or Durable Medical Equipment Regional Carriers and Private Program health insurance administrators or third party administrators.

16.    **Termination.**

A.    This Agreement may be terminated prior to Closing by the mutual written consent of the parties.

B.    Purchaser may terminate this Agreement prior to Closing by giving written notice of termination to Seller if:  (i) Seller has made a material misrepresentation or is in material breach of the representations and warranties contained in this Agreement; (ii) Seller is in material default in observance of or in the due and timely performance of any of the agreements and covenants contained in the Agreement; (iii) Seller is in material breach of a condition of Closing that has not been previously waived by Purchaser.

C.    Seller may terminate this Agreement prior to Closing by giving written notice of termination to Purchaser if:  (i) Purchaser has made a material misrepresentation or is in material breach of the representations and warranties contained in this Agreement; (ii) Purchaser is in material default in observance of or in the due and timely performance of any of the agreements and covenants contained in the Agreement; (iii) Purchaser is in material breach of a condition of Closing that has not been previously waived by Seller.

D.    The parties agree to execute and deliver all documents and complete all actions necessary to consummate this transaction.  If Closing does not take place on or before the Closing Date because there has been a failure of any condition precedent set forth herein without the fault or breach of either party, then all rights and obligations of both parties under this Agreement shall terminate, and this Agreement shall thereafter be void and of no effect; provided, however, that the party failing to satisfy such condition precedent shall have the right, by delivery of written notice thereof, to extend closing for up to an additional thirty (30) days to satisfy any such condition precedent.

**IN WITNESS WHEREOF**, Seller and Purchaser, through their duly authorized officers, have executed this Agreement on the day and year first written above.

| SELLER: | PURCHASER: |
|---|---|
| **NEW HORIZONS HEALTH SYSTEMS, INC.** | **ST. ELIZABETH HEALTHCARE** |
| a Kentucky nonprofit corporation | a Kentucky nonprofit corporation |

BY:_____

Print Name:_____

BY:_____

    **Garren Colvin**, President

**HEALTHPOINT FAMILY CARE, INC.**

a Kentucky nonprofit corporation

BY:_____

Print Name:_____

Title:_____

## LIST OF EXHIBITS

Exhibit A        Bill of Sale to be delivered to SEH by Seller at Closing

Exhibit A-1     Bill of Sale to be delivered to HP by Seller at Closing

Exhibit B        Certificate to be delivered by SEH to Seller

Exhibit B-1     Certificate to be delivered by HP to Seller

Exhibit C        Certificate to be delivered by Seller to Purchaser

Exhibit D        Assignment and Assumption of the Premises Lease

Exhibit E        General Warranty Deed to Premises

## LIST OF SCHEDULES

SCHEDULE 1.A.(i)        List of Permits

SCHEDULE 1.A.(iii)      List of Business Equipment

SCHEDULE 1.A.(iv)       List of Assumed Contracts, Leases, and Agreements

SCHEDULE 1.A.(viii)     List of Intangible Assets

SCHEDULE 1.B.(i)        List of Excluded Assets

SCHEDULE 1.B.(ii)       List of Clinic Equipment

SCHEDULE 15.B.(ii)      List of Government Program and Private Program Investigations
                        and Audits

SCHEDULE 15.B.(x)       List of Reimbursement or Payment Rate Appeals Pending Before
                        any Governmental Authority or Administrator of any Private
                        Program

SCHEDULE 15.D.(iii)     List of Governmental Programs Seller is Certified to Participate in

SCHEDULE 15.C.          List of HIPAA Violations

SCHEDULE 15.D.(i)       List of Governmental Program Appeals, Audits, etc.

SCHEDULE 15.E.(ii)      List of Medicare, Medicaid or Federal Health Care Program
                        Violations, Convictions, Charges, etc.

**EXHIBIT A**

(Bill of Sale to be delivered to SEH by Seller at Closing)

# BILL OF SALE

1.   **Sale and Transfer of Equipment**.   For good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, and as contemplated by that certain Asset Purchase Agreement (the "Purchase Agreement") dated as of October __, 2015, by and among **ST. ELIZABETH HEALTHCARE**, a Kentucky non-profit corporation ("Purchaser"), and **NEW HORIZONS HEALTH SYSTEM, INC.,**  a Kentucky non-profit corporation ("Seller"), Seller hereby sells, conveys, assigns, transfers, grants and delivers to Purchaser, and Purchaser's successors and assigns forever, effective as of 12:01 a.m., October __, 2015 (the "Effective Time"), good and unencumbered title and interest in and to and to the Business Equipment, as defined and described in the Purchase Agreement.

2.   **Further Actions**.   Seller covenants and agrees to warrant and defend the sale, conveyance, assignment, transfer, grant and delivery of the Business Equipment hereby made against all persons whomsoever, to take all steps necessary to establish the record of Purchaser's title to the Business Equipment and, at the request of Purchaser, to execute and deliver further instruments of transfer and assignment and take such other action as Purchaser may reasonably request to more effectively transfer and assign to and vest in Purchaser the Business Equipment, all at the sole cost and expense of such Seller.  If, subsequent to the date hereof, any property that is part of the Business Equipment comes into the possession of Seller, Seller shall promptly deliver the same to Purchaser, at Seller's expense.

3.   **Terms of the Purchase Agreement**.   The terms of the Purchase Agreement, including Seller's representations, warranties, covenants, agreements and indemnities relating to the Business Equipment, are incorporated herein by this reference.  Seller acknowledges and agrees that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern. Capitalized terms used but not defined herein shall have the meanings for such terms that are set forth in the Purchase Agreement.

4.   **Notices**.  All notices or other communications or deliveries under this Bill of Sale shall be given as provided in the Purchase Agreement.

5.   **Binding Effect; Assignment**.   This Bill of Sale and all of the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6.    **Governing Law**.    This Bill of Sale shall be interpreted, construed and governed according to the laws of the Commonwealth of Kentucky.

**IN WITNESS WHEREOF**, Seller has executed this Bill of Sale on October ___, 2015, but effective as of the Effective Time.

**NEW HORIZONS HEALTH SYSTEM, INC.**
a Kentucky non-profit corporation

BY:_____

Print Name:_____

Title:_____

## EXHIBIT A-1

(Bill of Sale to be delivered to HP by Seller at Closing)

# BILL OF SALE

1.   **Sale and Transfer of Equipment**.  For good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, and as contemplated by that certain Asset Purchase Agreement (the "Purchase Agreement") dated as of October __, 2015, by and among **HEALTHPOINT FAMILY CARE, INC.**, a Kentucky non-profit corporation ("Purchaser"), and **NEW HORIZONS HEALTH SYSTEM, INC.,**  a Kentucky non-profit corporation ("Seller"), Seller hereby sells, conveys, assigns, transfers, grants and delivers to Purchaser, and Purchaser's successors and assigns forever, effective as of 12:01 a.m., October __, 2015 (the "Effective Time"), good and unencumbered title and interest in and to and to the Clinic Equipment, as defined and described in the Purchase Agreement.

2.   **Further Actions**.   Seller covenants and agrees to warrant and defend the sale, conveyance, assignment, transfer, grant and delivery of the Clinic Equipment hereby made against all persons whomsoever, to take all steps necessary to establish the record of Purchaser's title to the Clinic Equipment and, at the request of Purchaser, to execute and deliver further instruments of transfer and assignment and take such other action as Purchaser may reasonably request to more effectively transfer and assign to and vest in Purchaser the Clinic Equipment, all at the sole cost and expense of such Seller.  If, subsequent to the date hereof, any property that is part of the Clinic Equipment comes into the possession of Seller, Seller shall promptly deliver the same to Purchaser, at Seller's expense.

3.   **Terms of the Purchase Agreement**.   The terms of the Purchase Agreement, including Seller's representations, warranties, covenants, agreements and indemnities relating to the Clinic Equipment, are incorporated herein by this reference.  Seller acknowledges and agrees that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern. Capitalized terms used but not defined herein shall have the meanings for such terms that are set forth in the Purchase Agreement.

4.   **Notices**.  All notices or other communications or deliveries under this Bill of Sale shall be given as provided in the Purchase Agreement.

5.   **Binding Effect; Assignment**.  This Bill of Sale and all of the provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6. **Governing Law**.    This Bill of Sale shall be interpreted, construed and governed according to the laws of the Commonwealth of Kentucky.

**IN WITNESS WHEREOF**, Seller has executed this Bill of Sale on October \_\_\_, 2015, but effective as of the Effective Time.

                                        **NEW HORIZONS HEALTH SYSTEM, INC.**
                                        a Kentucky non-profit corporation

                                        BY:_____
                                        Print Name:_____
                                        Title:_____

**EXHIBIT B**
(Certificate to be delivered by Purchaser to Seller)


**CERTIFICATE
OF INCUMBENCY AND AUTHORIZATION OF
ST. ELIZABETH HEALTHCARE**


I, Barbara L. Krohman, hereby certify that I am the Secretary and official custodian of the records, including the Articles of Incorporation, Bylaws, and the minutes of the meetings of the Board of Directors and its committees, of **ST. ELIZABETH HEALTHCARE**, a non-profit corporation duly organized and existing under the laws of the Commonwealth of Kentucky (herein "Corporation"), and hereby certify, on behalf of Corporation, to **NEW HORIZONS HEALTH SYSTEM, INC.,** a non-profit corporation organized and existing under the laws of the Commonwealth of Kentucky, as follows:

(1)    At a meeting of the Corporation on October ___, 2015, properly called, the Corporation's Board of Directors authorized the contemplated acquisition of New Horizons Health System, Inc., a non-profit corporation (herein "New Horizons") (the "Transaction") pursuant to the terms of the Asset Purchase Agreement dated October ___, 2015, between Corporation, HealthPoint Family Care, Inc. and New Horizons (the "Purchase Agreement") and said authorization has not been amended or revoked and is in full force and effect; and

(2)    Corporation's President, Garren Colvin, is authorized to execute and deliver any and all necessary documents to consummate the Transaction including, but not limited to, the Purchase Agreement, all Assignment documents, the Closing Statement, Corporation's Closing Certificate, and any and all other documents, agreements, instruments or certificates (including any amendments or revisions thereto), and to take any other action, he deems necessary or desirable to consummate the Transaction as agreed upon by the parties.

(3)    The following is the duly elected and qualified incumbent of the respective office of Corporation set forth below opposite his name, and he has been acting in such capacity at all times including the date of the Purchase Agreement and the date hereof, and that the signature set forth below opposite his name is his genuine signature.

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|
| Garren Colvin | President | _____ |

(4)    Corporation is a non-profit corporation validly existing and in good standing under the laws of the Commonwealth of Kentucky.

**IN WITNESS WHEREOF**, I have hereunto set my hand on behalf of Corporation this ____ day of October, 2015.

**ST. ELIZABETH HEALTHCARE**


BY:_____
Barbara Krohman, Secretary

**EXHIBIT B-1**

(Certificate to be delivered by Purchaser to Seller)

**CERTIFICATE**
**OF INCUMBENCY AND AUTHORIZATION OF**
**HEALTHOINT FAMILY CARE, INC.**

I, _____, hereby certify that I am the Secretary and official custodian of the records, including the Articles of Incorporation, Bylaws, and the minutes of the meetings of the Board of Directors and its committees, of **HEALTHPOINT FAMILY CARE, INC.,** a nonprofit corporation duly organized and existing under the laws of the Commonwealth of Kentucky (herein "Corporation"), and hereby certify, on behalf of Corporation, to **NEW HORIZONS HEALTH SYSTEM, INC.,** a non-profit corporation organized and existing under the laws of the Commonwealth of Kentucky, as follows:

(1)    At a meeting of the Corporation on October ___, 2015, properly called, the Corporation's Board of Directors authorized the contemplated acquisition of the Clinic Equipment of New Horizons Health System, Inc., a non-profit corporation (herein "New Horizons") (the "Transaction") pursuant to the terms of the Asset Purchase Agreement dated October ___, 2015, between Corporation, St. Elizabeth Healthcare, and New Horizons (the "Purchase Agreement") and said authorization has not been amended or revoked and is in full force and effect; and

(2)    Corporation's President, _____, is authorized to execute and deliver any and all necessary documents to consummate the Transaction including, but not limited to, the Purchase Agreement, all Assignment documents, the Closing Statement, Corporation's Closing Certificate, and any and all other documents, agreements, instruments or certificates (including any amendments or revisions thereto), and to take any other action, he deems necessary or desirable to consummate the Transaction as agreed upon by the parties.

(3)    The following is the duly elected and qualified incumbent of the respective office of Corporation set forth below opposite his name, and he has been acting in such capacity at all times including the date of the Purchase Agreement and the date hereof, and that the signature set forth below opposite his name is his genuine signature.

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|
| _____ | President | _____ |

(4)    Corporation is a non-profit corporation validly existing and in good standing under the laws of the Commonwealth of Kentucky.

**IN WITNESS WHEREOF**, I have hereunto set my hand on behalf of Corporation this _____ day of October, 2015.

**HEALTHPOINT FAMILY CARE, INC.**


BY:_____
_____, Secretary

**EXHIBIT C**

(Certificate to be delivered by Seller to Purchaser)

**CERTIFICATE OF INCUMBENCY AND AUTHORIZATION
OF
NEW HORIZONS HEALTH SYSTEMS, INC.**

I, _____, hereby certify that I am the Secretary and official custodian of the records, including the Articles of Incorporation, Bylaws, and the minutes of the meetings of the Board of Directors and its committees, of **NEW HORIZONS HEALTH SYSTEMS, INC.**, a nonprofit corporation duly organized and existing under the laws of the Commonwealth of Kentucky (herein "Corporation"), and hereby certify, on behalf of Corporation, to **ST. ELIZABETH HEALTHCARE**, a Kentucky nonprofit corporation, and **HEALTHPOINT FAMILY CARE, INC.**, a Kentucky nonprofit corporation, as follows:

(1)    Pursuant to the Written Consent of Directors dated October __, 2015, the Corporation's Board of Directors unanimously authorized the contemplated sale of substantially all of the Corporation's assets to St. Elizabeth Healthcare ("SEH") and the Clinic Equipment to HealthPoint Family Care, Inc. ("HP") (the "Transaction") pursuant to the terms of the Asset Purchase Agreement dated October __, 2015, between Corporation, SEH and HP (the "Purchase Agreement"), and said authorization has not been amended or revoked and is in full force and effect; and

(2)    Corporation's President, Bernie Poe, is authorized to execute and deliver any and all necessary documents to consummate the Transaction including, but not limited to, the Purchase Agreement, all Assignment documents, the Closing Statement, Corporation's Closing Certificate, and any and all other documents, agreements, instruments or certificates (including any amendments or revisions thereto), and to take any other action, he deems necessary or desirable to consummate the Transaction as agreed upon by the parties.

(3)    The following is the duly elected and qualified incumbent of the respective office of Corporation set forth below opposite his name, and he has been acting in such capacity at all times including the date of the Purchase Agreement and the date hereof, and that the signature set forth below opposite his name is his genuine signature.

| NAME | TITLE | SIGNATURE |
|------|-------|-----------|
| Bernie Poe | President | _____ |

(4)    Corporation is a nonprofit corporation validly existing and in good standing under the laws of the Commonwealth of Kentucky.

**IN WITNESS WHEREOF**, I have hereunto set my hand on behalf of Corporation this _____ day of October, 2015.

**NEW HORIZONS HEALTH SYSTEMS, INC.**
a Kentucky nonprofit corporation


BY:_____

_____, Secretary

## EXHIBIT D

(form of Assignment and Assumption of Premises Lease)

## ASSIGNMENT AND ASSUMPTION OF PREMISES LEASE

**THIS ASSIGNMENT AND ASSUMPTION OF PREMISES LEASE** ("Assignment") is entered into as of the _____ day of October, 2015, between **NEW HORIZONS HEALTH SYSTEMS, INC.**, a Kentucky nonprofit corporation ("NH"), 330 Roland Avenue, Owenton, Kentucky 40359; and **ST. ELIZABETH HEALTHCARE**, a Kentucky nonprofit corporation ("SEH") of One Medical Village Drive, Edgewood, Kentucky 41017.

**17.    RECITALS.**  Golden Scepter, LLC, a Kentucky limited liability company, of P.O. Box 466, 120 Progress Way, Owenton, Kentucky 40359 is the landlord ("Landlord"), under a Lease Agreement dated July 1, 2009, a copy of which is attached as **Exhibit A** and is incorporated herein by reference (collectively "Lease") with NH for property located at 120 Progress Way, Owenton, Kentucky 40359, and more particularly described in **Exhibit A** ("Property").  NH, SEH and HealthPoint Family Care, Inc. have entered into an Asset Purchase Agreement ("APA") for the sale of NH's assets, including assignment of the Lease.  This Assignment is entered into in consideration of the mutual covenants it contains and in consideration of the closing on the APA.

**18.    ASSIGNMENT.**  NH assigns to SEH, its successors and assigns, all of NH's right, title and interest as lessee under the Lease as of the _____ day of October, 2015 ("Effective Date").

**19.    ASSUMPTION.**  SEH accepts this Assignment as of the Effective Date and agrees to assume and perform the duties of the tenant under the Lease.

**20.    REPRESENTATIONS OF NH.**  In consideration for SEH agreeing to proceed with closing and assumption of the Lease, NH makes the following representations to SEH to induce SEH to lease the Property and execute this Assignment:

      **(a)**    the current term of the Lease commenced on July 1, 2009, and expires June 30, 2018, unless extended pursuant to the terms of the Lease;

      **(b)**    monthly minimum rent under the Lease has been paid through _____;

      **(c)**    all Additional Rent due and owing under the terms of the Lease has been paid through _____;

      **(d)**    the Lease has not been modified, supplemented, or amended in any way;

(e)    as of the date hereof, there are no known existing defenses or offsets that NH has against the enforcement of the Lease by Landlord;

(f)    no rents have been paid in advance by NH except as provided in the Lease; and

(g)    no security deposit was required under the terms of the Lease.

The foregoing representations shall survive SEH's closing on the APA and delivery of the Property to SEH as provided in the APA.

**21.**    **GOVERNING LAW.**  This Assignment shall be interpreted, governed by, and construed in accordance with the laws of the Commonwealth of Kentucky.

**22.**    **SUCCESSORS AND ASSIGNS.**  This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

**23.**    **COUNTERPARTS.**  This Assignment may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have executed this Assignment on the date first written above.

**NH:**

**NEW HORIZONS HEALTH SYSTEMS, INC.**,
a Kentucky nonprofit corporation

BY:_____
Print Name:_____
Title:_____

**SEH:**

**ST. ELIZABETH HEALTHCARE**,
a Kentucky nonprofit corporation

BY:_____
Print Name:_____
Title:_____

## SCHEDULE 1.A.(i)

(List of Permits)

## **SCHEDULE 1.A.(iii)**

(List of Business Equipment)

## SCHEDULE 1.A.(iv)

(List of Assumed Contracts, Leases, and Agreements)

1. Lease Agreement dated July 1, 2009 between Golden Scepter, LLC and Debtor with regard to property known as 120 Progress Way, Owenton, Kentucky 40359.

## <u>SCHEDULE 1.A.(viii)</u>

(List of Intangible Assets)

1.      The name "New Horizons Health Systems, Inc." is registered with the State of Kentucky, as a nonprofit corporation; organization number 0493098.

2.      A list of all telephone and fax numbers:      (502) 484-3663 (main#); (___) _____ (fax).

3.      The organization maintains a web site: www.hhhsonline.com

## SCHEDULE 1.B.(ii)

(List of Clinic Equipment)

**SCHEDULE 1.C.**

(Excluded Assets)

1. 322 Roland Avenue, Owenton, Kentucky  40359

2. 326 Roland Avenue, Owenton, Kentucky  40359

**SCHEDULE 15.B.(ii)**

(List of Government Program and Private Program Investigations and Audits)

## SCHEDULE 15.B.(x)

(List of Reimbursement or Payment Rate Appeals Pending Before any Governmental Authority or Administrator of any Private Program)

**SCHEDULE 15.D. (iii)**

(List of Governmental Programs Seller is Certified to Participate in)

**SCHEDULE 15.C.**

(List of HIPAA Violations)

**SCHEDULE 15.D.(i)**

(List of Government Program and Private Program Appeals, Audits, etc.)

**SCHEDULE 15.E.(ii)**

(List of Medicare, Medicaid or Federal Care Program

Violations, Convictions, Charges, etc.)

485686v4