**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISON**

IN RE:

New Horizons Health Systems, Inc.                   Chapter 11
d/b/a New Horizons Medical Center
d/b/a New Horizons Family Practice                  Case No. 15-30235-grs

     Debtor

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ENTRY OF
AN ORDER (A) AUTHORIZING SALE OF SUBSTABNTIALLY ALL ASSETS
FREE AND CLEAR OF LIENS AND ENCUMBRANCES PURSUANT TO
11 U.S.C. §§ 363(b) AND (f); (B) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES PURSUANT TO 11 U.S.C. § 365; AND (C) ESTABLISHING CURE AMOUNTS**

The Official Committee of Unsecured Creditors (the "Committee") hereby filed this limited objection (the "Objection") to the Debtor's Motion for Entry of an Order (A) Authorizing Sale of Substantially All Assets Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (C) Establishing Cure Amounts [Dkt. No. 135] ](the "Sale Motion"). In support of its Objection to the Sale Motion, the Committee states as follows:

**BACKGROUND**

1. On May 29, 2015, (the "Petition Date") New Horizons Health Systems, Inc., d/b/a New Horizons Medical Center, d/b/a New Horizons Family Practice ("Debtor") filed a voluntary Chapter 11 bankruptcy petition.

2. Since the Petition Date the Debtor has remained in control of its property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107-1108.

3. On July 16, 2015, the United States Trustee filed herein a Notice of Appointment of Creditors' Committee [Dkt. No. 86].

4. On September 21, 2015, the Court entered its Order Authorizing Employment Of Counsel for the Official Unsecured Creditors' Committee [Dkt. No. 122].

5. On October 29, 2015, the Debtor filed the Sale Motion seeking entry of an order, *inter alia*, (a) authorizing the Debtor to sell substantially all of its assets free and clear of liens and encumbrances, (b) authorizing the assumption and assignment of certain executory contracts, and unexpired leases, and (c) establishing cure amounts [Dkt. No. 135].

6. The Debtor attached to the Sale Motion a proposed Asset Purchase Agreement (the "APA") by and amongst itself, St. Elizabeth Healthcare ("St. Elizabeth"), and Healthpoint Family Care, Inc. ("Healthpoint").

7. The APA provides for the sale of substantially all of the Debtor's assets for the purchase price of $650,000.00 (the "Purchase Price") and the assumption and assignment of the Debtor's lease agreement (the "Lease") with Golden Scepter, LLC ("Golden Scepter"). *See* Sale Motion at 4.

8. The proposed cure amount for the Lease is $100,000.00, and this would be payable from the Purchase Price. *Id*

9. Additionally, up to $150,000.00 of the Purchase Price takes the form of an advance to pay the Debtor's operating costs prior to closing due to the Debtor's purported cash-flow insufficiencies. *Id.* This advance is to accorded administrative expenses status with priority over any or all other administrative expenses of the kind specified in 11 U.S.C. § 503(b) or 507(b). *See* Dkt. No. 135-1 at 4. Additionally, St. Elizabeth's is to be given a first-priority

mortgage on the Premises to secure repayment of this advance in the event the Court does not approve the sale or the sale does not close. *Id*.

10. The APA describes the premises leased pursuant the Lease as the "Leased Premises."

11. Additionally, the APA defines the real property to be sold as the "Premises," which are described therein as "322, 326, 329, and 330 Roland Avenue, Owenton, KY 40359." *See* Dkt. No. 135-1 at 1 and 6 (providing for the delivery of a General Warranty Deed for the "Premises"). The Sale Motion, however, provides that 322 Rowland Avenue and 326 Rowland Avenue will be "Excluded Assets." *Id*. at 4, and Dkt. No. 135-1, Schedule "C." Thus, it is unclear from the Sale Motion and the APA as to whether 322 Rowland Avenue and 326 Rowland Avenue will be sold pursuant to the APA.

12. The APA also describes a break-up fee (the "Break-Up Fee") of 10% of the Purchase Price, or $65,000, payable to St. Elizabeth "[i]n the event either the Bankruptcy Court does not approve the sale to [St. Elizabeth] or a Closing does not occur." *See* Dkt. No. 135-1 at 4.

13. The APA also provides for the acquisition by the Buyer of all books and records and only provides that the Debtor will retain copies.

14. The APA, in describing the assets to be sold, makes reference to numerous schedules which, at present, are incomplete.

15. Finally, the APA does not expressly excluded all of the Debtor's causes of action, including those under Chapter 5 of the Bankruptcy Code.

16. Prior to and since the Sale Motion was filed, the Committee has worked with the Debtor and its counsel to evaluate the marketing efforts made with respect to the Debtor's assets.

## **COMMITTEE'S OBJECTIONS**

17. The Committee objects to the Sale Motion on the basis that the Debtor's assets have been insufficiently marketed. As noted, the Committee continues to work with the Debtor to obtain further information on this issue, and the Committee may be in a position to satisfy itself on this issue prior to the hearing date on the Sale Motion, and objects on this basis to preserve its rights.

18. The Committee objects to the Sale Motion because, while it appears that the parties intend to exclude 322 Rowland Avenue and 326 Rowland Avenue from the sale, the APA's definition of the "Premises" as inclusive of those properties and the provision for the delivery of a General Warranty Deed for the "Premises" to St. Elizabeth (*see* Dkt. 135-1 at 6) makes this unclear. Therefore, the Committee objects to the Sale Motion to the extent that the APA provides for the sale of these properties.

19. The Committee objects to the Break-Up Fee because the circumstances under which St. Elizabeth's is entitled to the Break-Up Fee are broader than necessary. For example, under the APA, St. Elizabeth's would be entitled to the Break-Up Fee in *any* scenario in which the Court does not approve the sale or a closing does not occur, including one in which the fault for such non-approval or failure to close is attributable to St. Elizabeth itself, and even if St. Elizabeth breaches the APA. The purpose of a break-up fee is to induce a stalking horse to enter into an auction process. *In re JW Res., Inc.*, 536 B.R. 193, 196 (Bankr. E.D. Ky. 2015). Accordingly, the Committee submits that the Break-Up Fee here would only be proper in the event of a material breach of the APA by the Debtor, or if St. Elizabeth is the losing party in an actual auction. Additionally, the Break-Up Fee of 10% of the Purchase Price is larger than a

typical break-up fee. *Id*. at 195 ("Fees in the range of 1% to 2% of the purchase price are often approved.")

20. The Committee objects to the Sale Motion to the extent that St. Elizabeth's will be given a first priority mortgage on the Premises to secure the repayment of the $150,000 advance under the APA. The Committee submits that the administrative expense treatment provided to St. Elizabeth's with respect to this advance is sufficient security, especially in light of the fact that, as drafted, St. Elizabeth's would be entitled to a first priority mortgage in any scenario in which the Court does not approve the sale or a closing does not occur, even if St. Elizabeth breaches the APA. Additionally, the mortgage would attach to the "Premises" in their entirety, which includes assets that would not be sold pursuant to the APA, which is prejudicial to the Debtor's estate and its unsecured creditors.

21. The Committee objects to the Sale Motion because there is not sufficient language in the APA or the proposed sale order preserving the Committee's right to access the Debtor's records, which the Committee will need in order to effectively administer the Debtor's estate.

22. The Committee objects to the Sale Motion on the basis that the Debtor's causes of action, including causes of action under Chapter 5 of the Bankruptcy Code, are not expressly excluded from the assets to be sold. Any assets that could be used to provide recoveries for unsecured creditors should not be sold.

23. The Committee objects to the Sale Motion to the extent that the incomplete schedules attached to the APA make it impossible at present for the Committee to fully evaluate the assets proposed to be sold pursuant to the APA.

## RESERVATION OF RIGHTS

The Committee reserves all rights to raise additional issues that arise as it continues to evaluate the transaction proposed pursuant to the Sale Motion and the APA.

WHEREFORE, the Committee respectfully requests that the Court enter an order (a) granting the relief requested herein, and (b) providing any and all other relief as is just and proper.

Dated: November 12, 2015
      Louisville, Kentucky

                                    Respectfully submitted,

                                    /s/ *D. Cooper Robertson*
                                  Brian H. Meldrum
                                  D. Cooper Robertson
                                  STITES & HARBISON, PLLC
                                  400 West Market Street
                                  Suite 1800
                                  Louisville, KY  40202-3352
                                  Telephone: (502) 587-3400

                                  COUNSEL FOR THE OFFICIAL UNSECURED
                                  CREDITORS COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically in the method established under CM/ECF Administrative Procedures Manual to all parties being notified via ECF having filed a Notice of Appearance in this Case on this 12th day of November, 2015.

                                  /s/ *D. Cooper Robertson*
                                  D. Cooper Robertson