IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| In re:<br>New Horizons Health Systems, Inc.<br>d/b/a New Horizons Medical Center<br>d/b/a New Horizons Family Practice<br><br>Debtor. | Chapter 11<br><br>Case No. 15-30235 (GRS) |

**DECLARATION OF BERNARD POE IN SUPPORT OF MOTION FOR AN ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; AND (C) ESTABLISHING CURE AMOUNTS**

I, BERNARD POE, make this Declaration pursuant to the provisions of 28 U.S.C. § 1746:

      1.     I am more than eighteen (18) years of age, and I make this Declaration of my own free will. I have personal knowledge of the facts in this Declaration and could competently testify to the following matters if I were called as a witness. I submit this Declaration in support of the Motion for an Order (I) Approving the Sale of Substantially All of the Debtor's Assets, (II) Authorizing Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief filed in the above-captioned adversary proceeding.

      2.     I am the Chief Executive Officer of debtor New Horizons Health Systems, Inc., debtor and debtor-in-possession (the "**Debtor**") in this case. The Debtor owns and operates a rural regional hospital and medical clinic for people in and around Owen Country.

      3.     On May 29, 2015, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**"). The Debtor continues to operate its business in bankruptcy as a debtor-in-possession. Debtor has struggled to maintain its cash flow during the Bankruptcy Case and, based on current projections, the Debtor cannot remain a viable business through the end of the year due to decreasing services and timing of government reimbursements.

4. Years before the petition date, it became apparent to the Debtor's Board of Directors that the Debtor should strongly consider selling its assets on a going concern basis, as that was the best way for the debtor to satisfy its debts and to keep the hospital and medical clinic open and operating to provide critical care to people living in the rural area in which the Debtor is situated.

5. Beginning in or about January 2013, I began to reach out to similarly situated health care operators and others in order to notify them of the Debtor's intention to sell, and to inquire of their possible interest. These efforts included letters, emails, and personal interactions with potentially interested parties. Copies of documentation evidencing these contacts may be requested through counsel for the Debtor.

6. Prior to the filing of the Chapter 11 case, only one party, St. Elizabeth Healthcare ("**St. Elizabeth**") had expressed serious interest in the purchase of the Debtor's assets.

7. The understanding that St. Elizabeth's interest was conditioned upon a purchase accompanied by the protections of 11 U.S.C. § 363, along with the other reasons set forth in my Declaration filed in Support of First Day Motions on May 29, 2015 [DE 16] led to the filing of the Debtor's petition for relief on May 29, 2015.

8. After the filing of the bankruptcy case, the Debtor renewed its search for possible buyers. I personally made contact with CEOs and presidents of institutions who were financially and operationally situated to purchase the Debtor's assets. I hosted groups who contacted the Debtor unsolicited for walk-throughs of the property and review of the Debtor's financials. I also sent letters to parties I believed might be interested in purchasing the Debtor's assets. Attached as Exhibit 1 is a series of letters sent to prospective interested parties after the filing of the case.

9. I also directed the Debtor's counsel, the Debtor's accountant, Kelley Gamble, and other board members, to provide interested parties with information sought as part of a due diligence process.

10. At the urging of the Unsecured Creditors Committee, the Debtor also reviewed the options of hiring a broker to assist with a sale. After interviewing candidates and reviewing the out-of-pocket costs associated with a brokerage sale, it was the Board's decision to move ahead toward a sale without the assistance of a broker and not spend cash or possible proceeds on a broker's fee. Given the efforts made prior to the filing of the case, I have confidence that

parties who might have interest in buying the assets of the Debtor, and continuing to provide hospital services were well aware of the bankruptcy filing and the sale potential by this time.

11. Throughout the pendency of the case, St. Elizabeth has been in contact with the Debtor, and consistently expressed its interest in the Debtor's property. Significant good faith arms' length negotiations occurred between St. Elizabeth and the Debtor regarding the terms and conditions of the proposed sale.  After protracted negotiations between the parties, a final APA was reached and the Debtor filed a motion seeking court approval of such a sale [DE 135] (the "**Sale Motion**"). Copies of the Sale Motion were sent to potentially interested parties, along with a cover letter soliciting counter-offers for the purchase of the Debtor's assets. The recipients of those letters may be requested through counsel for the Debtor.

12. Entering into the proposed sale with St. Elizabeth is in the best interest of the Debtor and the estate.  The Debtor has exhausted the market for a buyer for its assets over the last three years, and the proposed sale with St. Elizabeth represents the highest offer and only offer that has emerged that will allow the continued operation of the New Horizons hospital. Since the Debtor cannot realistically continue operations beyond the end of the year, if the Debtor does not enter into the proposed sale with St. Elizabeth, I believe the only realistic outcome is the termination of the Debtor's operations and the liquidation of the Debtor's assets.

13. St. Elizabeth is not an affiliate of the Debtor and shares no common ownership with the Debtor.  No director or officer of St. Elizabeth is an insider of the Debtor, and no director or officer of the Debtor is an insider of St. Elizabeth.  St. Elizabeth is not affiliated in any way to the Debtor, any affiliate of the Debtor or me.

14. There is a significant risk of immediate and irreparable deterioration of the value of the Debtor's assets and estate if the sale to St. Elizabeth and related transactions are not approved.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on  11/15/2015  .

_/s/ Bernard Poe_

**Bernard Poe, CEO**

Place of Signature: _Lexington_, Kentucky

10012816v3